**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEODOR BRUENING,<br><br>      Plaintiff,<br><br>      -against-<br><br>GREEN CASH, LLC, MAKSYM HOLOVCHENKO, MIKHAIL PARSHIN AKA MICHAEL PARSHIN, and FURKAT KASIMOV AKA FRANK KASIMOV,<br><br>      Defendants. | Civil Action No. 1:19-cv-1950-JPO |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

---

Danielle C. Newman
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Tel.: (212) 790-4500
Fax: (212) 790-4545
dnewman@manatt.com

Christine M. Reilly (*pro hac vice* forthcoming)
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd
Los Angeles, CA 90064
Tel.: (310) 312-4000
Fax: (310) 996-7037
creilly@manatt.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

RELEVANT ALLEGATIONS.............................................................................................. 3

ARGUMENT......................................................................................................................... 5

I.     APPLICABLE LEGAL STANDARDS.................................................................... 5

       A.     Federal Rule 12(b)(2) – Lack of Personal Jurisdiction ............................... 5

       B.     Federal Rule 12(b)(6) – Failure to State a Claim ........................................ 6

II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(2)............. 7

       A.     Plaintiff Cannot Establish Jurisdiction Under New York Law..................... 7

       B.     Personal Jurisdiction as to Plaintiff's Claims Does Not Satisfy Due Process............... 8

III.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)........... 11

       A.     Plaintiff Has Not Pleaded Any Facts Supporting Direct TCPA Liability. ................. 11

       B.     Plaintiff Has Not Pleaded Any Facts Demonstrating Vicarious TCPA Liability
              for Green Cash........................................................................................... 12

       C.     Plaintiff Has Not Pleaded Any Facts Demonstrating Vicarious TCPA Liability
              for the Individual Defendants. ................................................................... 16

       D.     Plaintiff Impermissibly Lumps Defendants Together in "Shotgun" Fashion. ............. 19

       E.     Plaintiff Pleads No Facts Supporting Allegations That the Messages Were
              Made Using an ATDS................................................................................. 19

       F.     Plaintiff's Second, Third, and Fourth Counts Fail to State a Claim Under the
              Implementing Regulations. ....................................................................... 20

       G.     Plaintiff Fails to State a Claim Under the GBL.......................................... 21

              1.     Plaintiff Fails to State a Claim Under GBL § 399-p................................. 21

              2.     Plaintiff Fails to State a Claim Under GBL § 349..................................... 22

IV.    THE COURT SHOULD STRIKE PLAINTIFF'S REQUEST FOR ATTORNEY'S
       FEES BECAUSE PLAINTIFF IS PROCEEDING PRO SE.............................................. 24

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Ahava Food Corp. v. Donnelly*,
2002 WL 31757449 (S.D.N.Y. Dec. 9, 2002) ................................................................................ 8

*Arch Specialty Ins. Co. v. Varanda Group, Inc.*,
2019 WL 1493660 (S.D.N.Y. Apr. 4, 2019) ................................................................................... 5

*Ash v. Richards*,
572 F. App'x 52 (2d Cir. 2014) ...................................................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 6, 12

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ...................................................................................................... 19

*Bank v. CreditGuard of Am.*,
2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019) ............................................................................... 3

*Bank v. Uber Techs. Inc.*,
2015 WL 8665441 (E.D.N.Y. Dec. 11, 2015),
*aff'd*, 669 F. App'x 579 (2d Cir. 2016) ....................................................................................... 21

*Bank v. Vivant Solar, Inc.*,
2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019) .................................................................. 12, 15, 21

*Baranski v. NCO Fin. Sys.*,
2014 WL 1155304 (E.D.N.Y. Mar. 21, 2014) ............................................................................. 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................................... 6

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ....................................................................................................... 5, 8

*Bristol-Myers Squibb v. Superior Ct. of Calif., San Francisco Cty.*,
137 S. Ct. 1773 (2017) ............................................................................................................... 6, 9

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) .......................................................................................................... 9

*Campagnello v. Ponte*,
2017 WL 4124337 (S.D.N.Y. Sept. 13, 2017) ............................................................................ 25

*Cardenas v. Spinnaker Resorts, Inc.*,
2017 WL 3315285 (D.N.J. Aug. 3, 2017) ..................................................................................... 8

*Childress v. Liberty Mut. Ins.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) .............................................................................. 14

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.*,
885 F.3d 154 (3d Cir. 2018) ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Page**

*Cunningham v. Capital Advance Solutions, LLC*,
2018 WL 6061405 (D.N.J. Nov. 20, 2018) ................................................................. 17

*Cunningham v. Channer, LLC*,
2018 WL 4620391 (W.D.N.Y. Sept. 26, 2018) ........................................................... 17

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ................................................................. 18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................................................................... 6

*Desyatnikov v. Credit Suisse Group, Inc.*,
2012 WL 1019990 (E.D.N.Y. Mar. 26, 2012) ............................................................. 18

*Freidman v. Massage Envy Franchising, LLC*,
2013 WL 3026641 (S.D. Cal. June 13, 2013) ............................................................. 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .................................................................................................... 6, 9

*Hurley v. Wayne Cty. Bd. of Educ.*,
2017 WL 2454325 (S.D. W. Va. June 6, 2017) ........................................................... 21

*In re Aluminum Warehousing*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ............................................................................. 9

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................................................... 13

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y. 2015) ....................................................................... 12, 14

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998) ......................................................................... 5, 10

*Kashfi v. Phibro-Salomon, Inc.*,
628 F. Supp. 727 (S.D.N.Y. 1986) .............................................................................. 15

*KHS Corp. v. Singer Fin. Corp.*,
2019 WL 1359262 (E.D. Pa. Mar. 26, 2019) .............................................................. 17

*Kim v. BMW of Manhattan, Inc.*,
819 N.Y.S.2d 848 (Sup. Ct. 2005),
*aff'd as modified*, 35 A.D.3d 315 (2006) ..................................................................... 25

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010) ......................................................................................... 13

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012) .................................................................................................. 22

*Kranser v. Rahco Funds LP*,
2012 WL 4053805 (S.D.N.Y. Aug. 9, 2012) ............................................................... 25

## TABLE OF AUTHORITIES

**Page**

*Laufer v. Ostrow*,
  55 N.Y.2d 305 (1982) ........................................................................................................ 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) .............................................................................................. 5, 10

*Magdalena v. Lins*,
  123 A.D.3d 600 (1st Dep't 2014) ...................................................................................... 9

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013) ............................................................................................... 5

*McDermet v. Porch.com, Inc.*,
  2019 WL 1619867 (D. Mass. Apr. 16, 2019) ....................................................................21

*Medina v. Bauer*,
  2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ..................................................................... 19

*Megna v. Biocomp Labs. Inc.*,
  166 F. Supp. 3d 493 (S.D.N.Y. 2016) ............................................................................ 6, 9

*Melito v. Am. Eagle Outfitters, Inc.*,
  2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ............................................................passim

*Meyer v. Capital Alliance Group*,
  2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ................................................................... 21

*Naiman v. TransVia LLC*,
  2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ................................................................... 14

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  975 F. Supp. 2d 392 (S.D.N.Y. 2013) .............................................................................. 15

*Nicholson v. Forster & Garbus LLP*,
  2012 WL 273150 (E.D.N.Y. Jan. 30, 2012) .................................................................... 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ........................................................................................................ 22

*Page v. Oath Inc.*,
  2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018) ............................................................ 12, 15

*Panacci v. A1 Solar Power, Inc.*,
  2015 WL 3750112 (N.D. Cal. June 15, 2015) ................................................................. 14

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997) .............................................................................................. 5

*Penguin Group (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) .......................................................................................... 5, 7, 9

*Reo v. Caribbean Cruise Line, Inc.*,
  2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) ........................................................... 14, 20

# TABLE OF AUTHORITIES

**Page**

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) ................................................................................ 17

*Ridge at Red Hawk, L.L.C. v. Schneider*,
  493 F.3d 1174 (10th Cir. 2007) ........................................................................................... 7

*Royalty Network Inc. v. Dishant.com, LLC*,
  638 F. Supp. 2d 410 (S.D.N.Y. 2009) ................................................................................. 6

*Seldon v. Magedson*,
  2012 WL 4475274 (S.D.N.Y. July 10, 2012) ...................................................................... 9

*Shostack v. Diller*,
  2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015), *report and rec. adopted*,
  2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ................................................................passim

*Snyder v. Perry*,
  2015 WL 1262591 (E.D.N.Y. Mar. 18, 2015) .................................................................. 20

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014) ................................................................................................ 9

*Spencer v. Arizona Premium Fin. Co.*,
  2011 WL 4473178 (W.D.N.Y. Sept. 26, 2011) ................................................................ 23

*Stadt v. Fox News Network LLC*,
  719 F. Supp. 2d 312 (S.D.N.Y. 2010) ............................................................................... 24

*State of New York v. Mountain Tobacco Co.*,
  2016 WL 324970 (E.D.N.Y. Jan. 26, 2016) ...................................................................... 10

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (2000) .......................................................................................................... 22

*Teledyne Indus., Inc. v. Eon Corp.*,
  373 F. Supp. 191 (S.D.N.Y. 1974) .................................................................................... 17

*Telfair v. Le Pain Quotidien U.S.*,
  2017 WL 1394384 (S.D.N.Y. Mar. 8, 2017) ...................................................................... 8

*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) .................................................................................................. 3

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ....................................................................................................... 12, 15

*Velez v. New York City Police Pension Fund Article II*,
  2019 WL 1382884 (S.D.N.Y. Mar. 27, 2019) .................................................................... 1

*Ventura v. Sinha*,
  2005 WL 1798629 (W.D.N.Y. July 27, 2005) ................................................................... 25

*Warren Publ'g Co. v. Harris Publ'ns, Inc.*,
  2002 WL 334478 (S.D.N.Y. Feb. 28, 2002) ..................................................................... 25

# TABLE OF AUTHORITIES

**Page**

*Washington v. Westchester Cty. Dep't of Correction*,
   2015 WL 408941 (S.D.N.Y. Jan. 15, 2015)..................................................................................... 18

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ......................................................................................... 3

*Winters v. Alza Corp.*,
   690 F. Supp. 2d 350 (S.D.N.Y. 2010) ......................................................................................... 25

*Worsham v. Travel Options, Inc.*,
   2016 WL 4592373 (D. Md. Sept. 2, 2016),
   *aff'd*, 678 F. App'x 165 (4th Cir. 2017)..................................................................................... 21

## STATUTES AND REGULATIONS

47 U.S.C. § 227(a)(1) ........................................................................................................ 19

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................... 11, 15

47 U.S.C. § 227(b)(3) ...................................................................................................3, 7

47 U.S.C. §§ 227, *et seq.* ........................................................................................passim

2000 Sess. Law News of N.Y. Ch. 546 (S. 8116) (McKinney's) ............................................. 22

47 C.F.R. 64.1200, *et seq.* ........................................................................................passim

47 C.F.R. 64.1601 ........................................................................................................passim

New York General Business Law § 349........................................................................passim

New York General Business Law § 399-p ...................................................................passim

## RULES

N.Y. Civil Practice Law & Rules § 302(a) ...........................................................5, 6, 7

Fed. R. Civ. P. 12(b)(2) ..............................................................................................passim

Fed. R. Civ. P. 12(b)(6) ..............................................................................................passim

Fed. R. Civ. P. 12(f)...................................................................................................24, 25

Fed. R. Civ. P. 8 ............................................................................................................ 19

## OTHER AUTHORITIES

3A W. Fletcher, Cyclopedia of the Law of Private Corporations
   § 1137 (rev. ed. 1991-1994). ......................................................................................... 17

Restatement (Third) of Agency § 1.01, cmt. c ........................................................................ 13

## INTRODUCTION

Like its predecessor, Plaintiff's threadbare amended Complaint (*see* Dkt. 31, "Complaint" or "Compl.") does little more than allege, in a conclusory fashion and without supporting facts, that Defendants Green Cash LLC ("Green Cash") and Maksym Holovchenko, Mikhail Parshin aka Michael Parshin, and Furkat Kasimov aka Frank Kasimov (collectively, the "Individual Defendants" and, together with Green Cash, the "Defendants") violated the Telephone Consumer Protection Act ("TCPA") and Articles 22A and 26 of the General Business Law of New York ("GBL"), §§ 349 and 399-p.  Plaintiff still bases these claims on his alleged receipt of text messages (the "Messages") on his mobile phone allegedly directing him to various websites and purportedly sent to him by a third party using an "automatic telephone dialing system" ("ATDS").  However, these allegations were merely *recycled wholesale* from a nearly identical complaint Plaintiff filed (and that was dismissed for lack of prosecution) nearly two years ago against *entirely different entities*, WD Services LLC ("WDS") and Nesmetaju LLC.[1]  And Plaintiff now *speculates* that Defendants in this case are somehow affiliated with the websites mentioned in the Messages—though he also readily concedes that Defendants may not even own or profit from the redirected web traffic.  Plaintiff also still fails to differentiate between Defendants, impermissibly lumping them together in true "shotgun" fashion.  Such flimsy allegations are fatally flawed and remain ripe for dismissal.

As shown below, Defendants' Motion should be granted and Plaintiff's amended Complaint should be dismissed, in its entirety and with prejudice, for at least the following reasons:

***First***, Plaintiff still does not establish personal jurisdiction over either Green Cash, which is indisputably a non-resident limited liability company ("LLC"), or the Individual Defendants, none of

---

[1] *Compare* Decl. of Danielle C. Newman ("Newman Decl."), Dkt. 19, at Ex. B, at ¶ 18 with Compl. ¶ 27 .  *See also* Newman Decl., Ex. B (dismissal order).  It is proper for the Court to take judicial notice of these documents when ruling on this Motion.  *See, e.g.*, *Velez v. New York City Police Pension Fund Article II*, 2019 WL 1382884, at *1 n.3 (S.D.N.Y. Mar. 27, 2019) (holding that a district court can take judicial notice of other court filings when ruling on a Rule 12(b)(6) motion).

whom are domiciled in New York.  In fact, not only do Defendants lack any physical presence in New York or any "continuous and systematic" connections with the State, but Plaintiff's Complaint contains no allegations regarding Defendants' contacts with New York at all, let alone any allegations suggesting that Defendants initiated the Messages in New York or that Defendants or the Messages themselves have any other connection with New York.  Thus, the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(2).

**_Second_**, the Court should also dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), as Plaintiff fails again to sufficiently allege a claim under the TCPA.  To begin, Plaintiff admits that the Messages did not mention Defendants.  Plaintiff likewise does not allege that Defendants physically sent the Messages, but apparently proffers that Defendants are vicariously liable for the acts of a "subsidiary" entity.  But Plaintiff provides no specific facts suggesting the Messages were initiated by or on behalf of Green Cash, including, in particular facts, suggesting that Green Cash had a special relationship with or any control over any purported agent that may have texted him without authorization.  Similarly, Plaintiff seeks to hold the Individual Defendants liable for acts of a corporation, but he includes no specific facts and offers only bald conclusions concerning their alleged conduct that would support such liability.  Further, the Complaint is still devoid of specific facts supporting his conclusions that the Messages were initiated using an ATDS.

**_Third_**, Plaintiff purports to bring three TCPA causes of action under various regulations—*i.e.*, 47 C.F.R. 64.1200(b)(1), 47 C.F.R. 64.1200(b)(2), and 47 C.F.R. 64.1601.  These claims remain fatally flawed because those regulations do not create private rights of action, and thus fail as a matter of law.

**_Fourth_**, the GBL claims likewise are still facially deficient and ripe for dismissal because they are based on the same allegations as the TCPA claims and fail to allege that any of the Messages were made by or on behalf of Defendants.  Indeed, Plaintiff's claim under GBL § 399-p necessarily fails

because the statute exempts from its purview telemarketing through media *other than by telephone calls*, and therefore does not cover text messages.  The GBL § 349 claim fails as well because Plaintiff has not alleged a materially misleading representation or pleaded actual damages.

*__Finally__*, the request for attorney's fees remains improper as Plaintiff is proceeding *pro se*.

## RELEVANT ALLEGATIONS

Plaintiff attempted to amend his faulty pleading to address the numerous deficiencies cited in Defendants' previous dispositive motion.  *See generally* Dkts. 18 & 31.  But in the process of addressing a few (but not all) of those deficiencies, Plaintiff created many more, and thus, his Complaint still does not satisfy federal pleading standards.  At best, Plaintiff, who is an experienced litigation attorney rather than a typical *pro se* litigant,[2] now alleges the following:

Like in his original pleading (*see* Dkt. 1), Plaintiff alleges that Green Cash is not a New York LLC, but rather is an entity "registered in California."  Compl. ¶ 3.  Nonetheless, he continues to allege, without any supporting facts, that the "Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3)."  *Id.*, ¶ 7.  Similarly, the Complaint still does not allege that the Individual Defendants reside in New York, rather that they "resid[e] in California."  *Id.*, ¶ 4.[3]

Moreover, Plaintiff continues to baldly allege that Green Cash "is the corporate parent of non-party [WDS]," (*id.*, ¶ 3), which he claims is an "inactive – administratively dissolved" entity.  *Id.*, ¶ 5. The Complaint also now adds a litany of conclusory allegations concerning Green Cash's purported

---

[2] Though appearing *pro se*, Plaintiff is an experienced licensed attorney who is not entitled to "the special consideration which the courts customarily grant to *pro se* parties."  *Bank v. CreditGuard of Am.*, 2019 WL 1316966, at *4 (E.D.N.Y. Mar. 22, 2019) (internal citations omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (observing that "a lawyer representing himself ordinarily receives no [special] solicitude").  This Court can take judicial notice of Plaintiff's law firm profile, which is available at https://www.offitkurman.com/attorney/theodor-d-e-bruening/.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("[A] court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (internal quotation marks omitted).

[3] *See also* Decl. of Furkat Kasimov ("Kasimov Decl."), Dkt. 22, at ¶ 2; Decl. of Maksym Holovchenko ("Holovchenko Decl."), Dkt. 20, at ¶ 2; Decl. of Mikhail Parshin ("Parshin Decl."), Dkt. 21, at ¶ 2.

control over and connection to WDS, concluding that "Green Cash is vicariously liable for WDS' distribution of the Messages." *Id.*, ¶ 23; *see generally id.*, ¶¶ 18-25.  Similarly, Plaintiff still alleges, again without any supporting facts, that "[the Individual Defendants] are individuals . . . who at all relevant times operate and/or own Green Cash, LLC and directed or otherwise operated WDS" (*id.*, ¶ 4), and that they had "complete control and domination" over Green Cash and WDS.  *Id.*, ¶¶ 20-21, 23.  He also continues to allege, in a similar conclusory fashion, that Green Cash, along with the other "defendants," "controlled" the websites referenced in the Messages.  *Id.*, ¶ 8.

Further, Plaintiff still concedes throughout his inconsistent pleading that his claims lack merit. For example, he contends that "in 2017 [he] received thirty-five unsolicited automated text messages . . . on his cell phone designed to direct plaintiff to payday loan websites owned or controlled by [D]efendants," some of which redirected him to other websites, but asserts that "**[i]t is unknown if defendants own the Secondary Websites . . . or profited from the redirected online traffic [from Defendants' Websites] to the Secondary Websites**." *Id.*, ¶¶ 8, 14 (emphasis added).  Yet, Plaintiff also now attaches screenshots of the Messages, which definitively show that none of the Messages mention any of the Defendants.  *Id.*, ¶¶ 9, 27 & Exhibit 2 thereto.  And the Complaint still fails to allege who *actually* sent any of the Messages, suggesting that it may have been Defendants, some unknown agents, or possibly WDS, a defunct entity.[4]  *Id.*, ¶¶ 8-19, 27.

The foregoing represents the <u>sum total</u> of Plaintiff's allegations in his Complaint.  What remains is a laundry list of formulaic and inconsistent allegations that parrot the elements of his purported claims but lack any supporting facts and either: (a) were mostly carried over from his original pleading with little to no revision,[5] or (b) merely reflect and mimic case law and legal arguments raised in Defendants' motion to dismiss the prior complaint.

---

[4] *See also id.*, ¶¶ 1, 30, 35, 40, 44, 47, 49, 52, 55, 58, 62, 68-69, 71.

[5] In many instances, he simply added the phrase "or their agents" to his allegations.

## ARGUMENT

## I.     APPLICABLE LEGAL STANDARDS

### A.     Federal Rule 12(b)(2) – Lack of Personal Jurisdiction

Plaintiff has the burden of demonstrating personal jurisdiction over each Defendant.  *See, e.g.*, *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists," *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012), which requires asserting "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Ash v. Richards*, 572 F. App'x 52, 53 (2d Cir. 2014) (summary order).  In considering whether this burden has been met, a court "will not draw argumentative inferences in the plaintiff's favor, nor is it required to accept as true a legal conclusion couched as a factual allegation." *Shostack v. Diller*, 2015 WL 5535808, at *2 (S.D.N.Y. Sept. 16, 2015) ("*Shostack I*"), *report and rec. adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ("*Shostack II*") (internal citations omitted).  Conclusory allegations lacking specificity do not satisfy this burden. *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998).

N.Y. Civil Practice Law & Rules ("C.P.L.R.") § 302 (the "Long-Arm Statute") is not co-extensive with constitutional requirements. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).  Therefore, the Court must engage in a two-step analysis: (1) determine whether there is a "statutory basis" for personal jurisdiction (*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)); and (2) determine whether the exercise of jurisdiction "accords 'with constitutional due process principles.'" *Arch Specialty Ins. Co. v. Varanda Group, Inc.*, 2019 WL 1493660, at *2 (S.D.N.Y. Apr. 4, 2019).[6]  In turn, whether the exercise of personal jurisdiction comports with due process depends on

---

[6] In the first inquiry, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal

whether there is general or specific jurisdiction. *Bristol-Myers Squibb v. Superior Ct. of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1779-80 (2017). "General personal jurisdiction subjects a defendant to suits on all claims." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[T]he paradigm forum for the exercise of general jurisdiction [for an individual] is the individual's domicile." *Goodyear*, 564 U.S. at 924. For an entity, "the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations omitted) (citing *Goodyear*, 564 U.S. at 735). Specific personal jurisdiction, on the other hand, subjects a defendant to suits only on claims that arise from the defendant's conduct in the forum. *See Daimler*, 571 U.S. at 126.[7]

### B.      Federal Rule 12(b)(6) – Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) provides for dismissal where a plaintiff has failed to state a claim upon which relief can be granted. A legal claim mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegations" will not suffice. *Id.* A "formulaic recitation of the elements" of a claim likewise fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Instead, the complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556. If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

Moreover, while this Court must generally accept Plaintiff's factual allegations as true when

---

quotation marks omitted); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009). Since the TCPA does not provide for nationwide service, the Court must look to the Long-Arm Statute. *Id.*; *see also Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 497 (S.D.N.Y. 2016).

[7] The Long-Arm Statute permits a court to exercise personal jurisdiction over an out-of-state party that (1) transacts business or contracts to supply goods or services within the state; (2) commits a tortious act within the state; (3) commits a tortious act outside of the state that causes an injury to a person or property within the state, provided that the party (i) engages in a persistent course of conduct with the state or (ii) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses, or possesses real property in the state. C.P.L.R. § 302(a).

ruling on a Rule 12(b)(6) motion, conclusory allegations, pure speculation, unwarranted factual deductions, or "legal conclusion[s] couched as factual allegation[s]" will not prevent dismissal. *See*, *e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4-5 (S.D.N.Y. Nov. 30, 2015). Put another way, Plaintiff's Complaint "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims" to avoid Rule 12(b)(6) dismissal. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

## II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(2)

Again, as a threshold matter, Plaintiff bears the burden of demonstrating personal jurisdiction over each Defendant. *See Penguin Group*, 609 F.3d at 34. As shown below, however, Plaintiff's conclusory jurisdictional allegations still shed little (if any) light on whether there is a statutory basis for personal jurisdiction under the Long-Arm Statute, much less whether the exercise of personal jurisdiction over Defendants comports with due process and, thus, they are facially defective.

### A.    Plaintiff Cannot Establish Jurisdiction Under New York Law.[8]

Indeed, the sum total of Plaintiff's amended allegations are that (i) "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3)"; (ii) "Plaintiff is a natural person who at all relevant times herein resided within the State of New York within the county of New York"; (iii) Green Cash "is registered in California as entity #201319410180"; (iv) "[The Individual Defendants] are individuals residing in California"; and (v) "The Messages were all received in New York on plaintiff's cell phone [which] has a New York area code." Compl. ¶¶ 2, 4, 7, 10.

Plaintiff's new Complaint still does not articulate a basis for establishing personal jurisdiction under the Long-Arm Statute and similarly fails to assert a subsection under which he contends jurisdiction would be proper. *See* C.P.L.R. § 302; Compl. ¶ 7. This is insufficient and warrants

---

[8] While this Motion does not address each and every section of the Long-Arm Statute, Defendants do not concede that Plaintiff has met, or can meet, any of the sections that confer personal jurisdiction over non-resident parties.

dismissal under Rule 12(b)(2).  *See, e.g.*, *Ahava Food Corp. v. Donnelly*, 2002 WL 31757449, at \*4 (S.D.N.Y. Dec. 9, 2002) (court lacked jurisdiction where plaintiff did not allege that non-resident defendant "was physically present in the state when purportedly" committing the tortious act because "communication by post or telephone from outside of New York into New York is not an act committed 'within the state'" for long-arm purposes); *Telfair v. Le Pain Quotidien U.S.*, 2017 WL 1394384, at \*1 (S.D.N.Y. Mar. 8, 2017) ("Conclusory allegations alone [were] insufficient" where "the cause of action . . . [did] not arise from" non-resident defendant's New York connection); *Shostack II*, at \*3 (court lacked personal jurisdiction for TCPA claims where plaintiff failed to show that individual defendants had any direct involvement in the actions giving rise to the litigation); *see also Cardenas v. Spinnaker Resorts, Inc.*, 2017 WL 3315285, at \*6 (D.N.J. Aug. 3, 2017) (no personal jurisdiction for TCPA claims where plaintiff failed to show that defendant or alleged agent made phone calls at issue).

Moreover, Plaintiff fails to identify *any* conduct by Defendants in New York, let alone any business transacted or tortious act committed in New York.  For example, Plaintiff does not allege that the Messages originated in the forum state (in addition to his failure to allege the threshold fact that Defendants actually sent the Messages), but rather that the Messages were merely "received in New York" on a "cell phone [that] has a New York area code."  *Id.*, ¶ 10.  Similarly, the Complaint remains devoid of facts that would suggest that any entity committed an act as Defendants' agents or that the Individual Defendants committed any acts in their personal capacities.[9]  Consequently, the Long-Arm Statute does not apply, and this Court lacks personal jurisdiction.

### B.      Personal Jurisdiction as to Plaintiff's Claims Does Not Satisfy Due Process.

Since the Long-Arm Statute does not provide jurisdiction, the Court can dismiss Plaintiff's claims and need not even consider due process.  *Best Van Lines*, 490 F.3d at 242 ("If jurisdiction is

---

[9] *See Shostack II*, at \*3 (dismissing individuals for lack of personal jurisdiction where "conclusory allegations did not include any facts showing that the individual defendants had any direct involvement in the actions giving rise to the litigation").

statutorily impermissible, of course, we need not reach the question of its constitutionality."); *Megna*, 166 F. Supp. at 500. Nonetheless, it is evident that due process cannot be satisfied, either.

The exercise of jurisdiction comports with due process only where a defendant "purposefully established minimum contacts in the forum State" and where "traditional notions of fair play and substantial justice" are not offended. *In re Aluminum Warehousing*, 90 F. Supp. 3d 219, 223-25 (S.D.N.Y. 2015) (internal citations omitted). Due process is only satisfied where there is general or specific jurisdiction. *Bristol-Myers Squibb*, 137 S. Ct. at 1779-80. Here, the Complaint fails to establish either type of jurisdiction for several reasons:

***First***, Plaintiff cannot assert general jurisdiction over Green Cash. Absent exceptional circumstances, such jurisdiction is appropriate in New York only if the LLC is a New York entity or has its principal place of business here.[10] *See, e.g.*, *Penguin Group*, 609 F.3d at 41; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016); *Magdalena v. Lins*, 123 A.D.3d 600, 601 (1st Dep't 2014) (finding no basis for general jurisdiction since defendant was "not incorporated in New York and [did] not have its principal place of business in New York."). Further, "a company [must have] engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks omitted); *Goodyear*, 564 U.S. at 919 (affiliations must "render them essentially at home in the forum state"). Here, Plaintiff still has not alleged any basis for general jurisdiction over Green Cash, nor can he credibly, because Green Cash was not formed in New York, does not maintain its principal place of business in New York, and none of its members are domiciled in New York, so it is not "at home" in the forum state. *See* Compl. ¶ 3.[11]

---

[10] Further, an LLC's domicile is based solely on the citizenship of its members. *Seldon v. Magedson*, 2012 WL 4475274, at *1 (S.D.N.Y. July 10, 2012) (dismissing claims where Plaintiff merely "described the LLC as 'located in the State of Arizona'" but failed to allege that the members were New York residents).

[11] *See* Kasimov Decl. at ¶¶ 2, 6; Holovchenko Decl. at ¶¶ 2, 6; Parshin Decl. at ¶¶ 2, 6.

***Second***, Plaintiff also cannot assert general jurisdiction over the Individual Defendants. To establish jurisdiction over a corporate officer, plaintiff "must show that [the defendant] **personally** took part in the activities giving rise to the action at issue." *State of New York v. Mountain Tobacco Co.*, 2016 WL 324970, at *7 (E.D.N.Y. Jan. 26, 2016); *see, e.g.*, *Karabu Corp.*, 16 F. Supp. 2d at 324 ("control . . . cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation"); *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982) ("[The] employee or agent . . . does not subject himself, individually, to the . . . jurisdiction of our courts, . . . unless he is doing business in our State **individually**.") (emphasis added).

In this regard, Plaintiff concedes that the Individual Defendants are not domiciled in New York. Compl. ¶ 4. Further, he does not and cannot allege that they conduct any business in New York in their **individual capacities**. *See* Kasimov Decl. at ¶ 5; Holovchenko Decl. at ¶ 5; Parshin Decl. at ¶ 5. Thus, Plaintiff still fails to allege any facts showing personal jurisdiction over any Individual Defendant, merely asserting conclusory allegations. *See* Compl. ¶¶ 20, 21, 23, 31-35. In fact, he alleges no facts that would support general jurisdiction over ***any*** Defendant.

***Third***, it is also readily apparent that this Court lacks specific personal jurisdiction over all of the non-resident Defendants where Plaintiff fails to assert that they had any contact with New York in connection with the claims. It is axiomatic that "specific [j]urisdiction is not justified where the relationship between the claim and transaction is too attenuated." *Licci ex rel. Licci*, 673 F.3d at 66 (citations omitted). Similarly, a "merely coincidental" connection with New York is insufficient. *Id.*; *see also Shostack I* (dismissing action against non-resident defendant for lack of specific personal jurisdiction where plaintiffs did not show connection to the forum and the specific claims at issue). Here, despite amending his allegations, the Complaint still fails to identify *any* conduct by any Defendant in New York, let alone any business transacted or tortious act committed *specifically by*

*Defendants* in New York, and does not provide factual support for the hollow allegations. *See* Compl. ¶¶ 2, 4, 7, 10. Without such facts, Plaintiff cannot establish a sufficient connection between Defendants and New York to support personal jurisdiction, and his claims should be dismissed.

### III.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

Even if Defendants were subject to personal jurisdiction (and they decidedly are not, as shown above), Plaintiff's amended TCPA claim, like its previous iteration, fails under Rule 12(b)(6) because it fails to allege *actual facts*, instead relying exclusively on threadbare legal conclusions.

#### A.   Plaintiff Has Not Pleaded Any Facts Supporting Direct TCPA Liability.

As noted above, Plaintiff alleges that Defendants violated the provision of the TCPA which prohibits "mak[ing] any call" (*i.e.*, sending a text) to a cell phone using an ATDS without "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. 64.1200(a)(1) & (2); *see* Compl. ¶¶ 48-50. Here, Plaintiff's Complaint still fails to allege facts supporting any of these elements, and thus it should be dismissed.

To begin, only the person who **physically** places a call "makes" or "initiates" a call within the meaning of the TCPA and can be subject to direct TCPA liability. *See, e.g.*, *Melito*, 2015 WL 7736547, at *4-5. Thus, federal courts routinely reject direct TCPA claims lacking sufficient facts regarding "the making, or physical placement, of a text message." *Id.* Plaintiff's claims fail yet again, **conceding that Defendants did not** *send* **the Messages**. *Id.*, ¶¶ 8, 10, 19, 30-31, 40.[12]

Moreover, the Complaint, like Plaintiff's prior pleading, is riddled with mere conclusory allegations that "the Messages [were] sent by defendants, or their agent or agents," but tellingly, it includes virtually no detail about Defendants' purported connection to the Messages and instead

---

[12] Plaintiff explicitly purports to hold only "Green Cash vicariously liable for WDS' distribution of the Messages." *Id.*, ¶¶ 23, 30 ("Upon information and belief, WDS sent the Messages"). Thus, Plaintiff concedes that Defendants are not subject to direct liability under the TCPA. However, in certain instances in the Complaint, he contradictorily asserts that "[t]he Messages [were] sent by defendants, or their agents." *See id.*, ¶¶ 40, 41, 44, 47a-b, 49, 52, 58. Therefore, Defendants briefly address the issue of direct liability in this Motion.

concedes that a <u>different entity</u>, WDS, "sent the Messages." *See id.*, ¶¶ 30-44.  Threadbare conclusions do not suffice to survive a 12(b)(6) motion.  *See Ashcroft*, 556 U.S. at 678; *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (granting motion to dismiss where plaintiff failed to plead "non-conclusory allegations"); *Bank v. Vivant Solar, Inc.*, 2019 WL 1306064, at \*4 (E.D.N.Y. Mar. 22, 2019) (dismissing claims where "there are no factual allegations to support the conclusory statement that Defendant placed or directed the placement of the [call]"); *see also Melito*, 2015 WL 7736547, at \*4-5 (granting motion to dismiss because "none of [defendant's] actions involves the making, or physical placement, of a text message").   Together, these conclusory allegations suggest that Defendants' agents (*i.e.*, unidentified third parties) or WDS could have physically sent the Messages, and thus they could be directly liable under the TCPA, not Defendants.

> **B.**     **Plaintiff Has Not Pleaded Any Facts Demonstrating Vicarious TCPA Liability for Green Cash.**

As noted above, Plaintiff's Complaint baldly asserts that "Green Cash is vicariously liable for WDS' distribution of the Messages."  Compl. ¶¶ 23, 31.  Plaintiff, yet again, fails to set forth any *facts* that would support this threadbare allegation.  It is evident that Plaintiff attempts to hold Green Cash liable solely as "the corporate parent of non-party [WDS]."  *Id.*, ¶ 3.  This, of course, is because Plaintiff abandoned and failed to prosecute his prior lawsuit against WDS.  Assuming the truth of these allegations, **seeking to hold a corporation liable based solely on a purported parental relationship is not sufficient to state a claim**.  *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotations and citation omitted); *Page v. Oath Inc.*, 2018 WL 1406621, at \*1 (S.D.N.Y. Mar. 20, 2018) (dismissing conclusory allegations that a parent entity was responsible for acts of its subsidiaries where complaint alleged no "facts that, as a matter of law, would warrant piercing the corporate veil or otherwise holding [the

parent] responsible for the actions of [its subsidiaries]").[13]

In an attempt to rectify the problems plaguing his prior pleading, Plaintiff merely spews threadbare allegations and parrots the basic legal elements that courts consider when assessing vicarious liability generally, yet his claim still fails for several reasons:

***First***, Plaintiff fails to plead the <u>existence</u> of a special relationship between Green Cash and WDS, as required to impose vicarious liability, merely relying on a purported parent-subsidiary connection. *See* Restatement (Third) of Agency § 1.01, cmt. c ("[T]he concept of agency posits a relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."). More specifically, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') **manifests assent** to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the **principal's control**, and the agent manifests assent or otherwise consents so to act." *Melito*, 2015 WL 7736547, at \*6 (emphasis added).

***Second***, Plaintiff does not plead <u>facts</u> to support the existence of a special relationship between Green Cash and WDS or that Green Cash had any control over WDS with respect to the sending of the Messages. In the TCPA context, courts have widely recognized that "[p]laintiffs must allege some **facts** regarding the relationship between an alleged principal and agent (or an alleged agent and sub-agent) and **cannot simply allege general control in a vacuum.**" *See id.* at \*7 (emphasis added). Thus, not only do courts routinely dismiss TCPA claims premised on vicarious liability, like Plaintiff's, at the pleadings stage, but also the vast majority of courts have held that failure to allege sufficient facts

---

[13] *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010) (affirming dismissal as to parent corporation because "[o]rdinarily, subsidiary corporations are not deemed to be the agents of their corporate parents"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417-18 (S.D.N.Y. 2011) (granting motion to dismiss where "the complaint [did] not allege a basis to disregard the separate corporate forms of these entities and impose liability on the Parent Companies"); *Shostack II*, at \*3 ("It is axiomatic that, absent direct involvement, a parent corporation may only be held liable for its subsidiary's actions if a plaintiff can show that the subsidiary is an agent or alter ego of the parent").

establishing agency or control is fatal to such claims.  *See*, *e.g.*, *Shostack II*, at \*3 (dismissing complaint that "allege[d] no facts that IAC had any direct involvement with . . . facilitating the allegedly illegal telemarketing calls. . . .  Nor has Plaintiff alleged any facts showing that IAC 'exploit[ed] its control.'"); *Naiman v. TransVia LLC*, 2017 WL 5992123, at \*6-7 (N.D. Cal. Dec. 4, 2017) (dismissing where no facts pleaded showed defendant had control over third party that made initial calls); *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at \*5 (N.D. Ohio Mar. 18, 2016) (dismissing where "sparse allegations made d[id] not allege any facts that show [defendant] had any power to give interim instructions or otherwise had any control over the performance of" callers).[14]

Such is blatantly true here.  Despite adding allegations, Plaintiff still does not—and indeed cannot—allege facts to plead the essential ingredient of control and, therefore, has failed to state a claim for vicarious TCPA liability.  Specifically, Plaintiff now asserts, in laundry list fashion, that (1) Green Cash and WDS share the same "directors, managers, partners, and officers"; (2) "Green Cash upon information and belief completely controlled and dominated WDS through its directors, managers, partners and officers, which were identical in both entities"; (3) "Green Cash is vicariously liable for WDS' distribution of the Messages"; (4) "WDS and Green Cash were established by the same attorney"; (5) "WDS sent the Messages on behalf of Green Cash and/or the Individual Defendants" with their "actual authority" or "apparent authority"; (6) Defendants "ratified" WDS's conduct; and (7) Defendants "benefitted" from WDS's conduct.  *See* Compl. ¶¶ 20-24, 31, 33.  These allegations merely plead control in a vacuum and thus fail to show the "special relationship" required for vicarious liability.  *See Jackson*, 88 F. Supp. 3d at 138 ("Plaintiff's non-conclusory allegations . . . fail to 'nudge' his claims against [defendant] 'across the line from conceivable to plausible'"); *Melito*,

---

[14] *See also Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at \*7 (N.D. Cal. June 15, 2015) (dismissing where plaintiff pleaded no allegations that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller and "virtually no allegations regarding the relationship" between defendant and the caller); *Childress v. Liberty Mut. Ins.*, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018).

2015 WL 7736547, at *7 ("Mere conclusory allegations that Archer was Experian's agent or that Experian had the right to control the sending of the texts, without more, fails to plead an agency relationship . . . sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA.").[15]

Moreover, "[i]t is well established law that allegations of mere shared management" are insufficient to establish *control* by one entity over another. *See e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 403 (S.D.N.Y. 2013); *Kashfi v. Phibro-Salomon, Inc.*, 628 F. Supp. 727, 733 (S.D.N.Y. 1986) ("The control exerted by the parent corporation must be extensive. It is not enough that related corporations have the same officers and directors."); *Bestfoods*, 524 U.S. at 69-70 ("[C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the [subsidiary].").

Finally, **none of Plaintiff's allegations connect Green Cash to the purportedly unlawful Messages**. Indeed, Plaintiff alleges that the offending Messages included links to three websites: www.requestloantoday.com, www.rushadvances.com, and www.fundsrequestonline.com. Compl. ¶ 11. He further alleges that a different entity, "Nesmetaju" (not Green Cash), is "the owner and operator" of the first website and that "loanrequestfinancialcenter LLC" (again, not Green Cash") is the "owner and operator" of the second and third websites. *Id.*, ¶¶ 12-14. He also posits that perhaps "Napayshni LLC" is "the owner of the websites." *Id.*, ¶ 15. Plaintiff then speculates that Green Cash may have some involvement with the websites. *Id.*, ¶ 17 ("Upon information and belief, defendants . . . own and operate directly or through intermediary entities, websites"). Still further, Plaintiff alleges that he received messages directing him to websites other than those previously mentioned,[16] but concedes that "[i]t is **unknown** if defendants own the Secondary Websites . . . or profited from the redirected

---

[15] *See also Bank*, 2019 WL 1306064, at *4; *Page*, 2018 WL 1406621, at *1; *Shostack II*, at *3.

[16] It is wholly unclear what the relevance of these other websites may be, since none of them appear in the Messages.

-15-

online traffic." *Id.*, ¶¶ 14, 16 (emphasis added). In short, Plaintiff clearly does not know who owns these websites and, in particular, the websites in the purportedly unlawful Messages. Replete contradictions aside, Plaintiff does not allege any facts connecting Green Cash or the Individual Defendants to the websites in the Messages or to the Messages more generally (and, in fact, he judicially admitted in his prior complaint against WDS that these websites were owned and operated by WDS, not Green Cash). *See* Newman Decl. Ex. B. at ¶ 11. As Plaintiff's second attempt at pleading contains no facts which could confer a basis for holding Green Cash liable for the alleged acts of other entities, the Complaint should be dismissed against Green Cash.

### C.     Plaintiff Has Not Pleaded Any Facts Demonstrating Vicarious TCPA Liability for the Individual Defendants.

Plaintiff's attempt at salvaging his claim against the Individual Defendants likewise fails, as he merely speculates any involvement on their behalf. In fact, the sum total of Plaintiff's allegations regarding the Individual Defendants are, *verbatim*:

- Defendants Maksym Holovchenko, Mikhail Parshin a/k/a Michael Parshin, and Furkat Kasimov a/k/a Frank Kasimov (the "Individual Defendants") are individuals residing in California who at all relevant times operate and/or own Green Cash, LLC and directed or otherwise operated WDS . . . . Compl. ¶ 4.

- The Individual Defendants comprise all the directors, managers, partners and corporate officers of Green Cash. The Individual Defendants have complete control and domination over Green Cash. *Id.*, ¶ 20.

- The Individual Defendants comprised all the directors, managers, partners and officers of WDS. The Individual Defendants had complete control and domination over WDS. *Id.*, ¶ 21.

- The Individual Defendants upon information and belief used their control and domination of WDS and Green Cash to further their illegal scheme of sending out unsolicited text messages, including the Messages, in violation of the TCPA. *Id.*, ¶ 23.

Absent from these new allegations is any semblance of actual facts supporting a connection between the Individual Defendants and the Messages at issue. Instead, Plaintiff merely regurgitates elements from case law in an attempt to establish personal liability for allegedly corporate acts.

-16-

It is clear that Plaintiff seeks to hold the Individual Defendants liable based *solely* on their role as corporate officers of Green Cash or WDS.  However, it is "well-established" that absent "special circumstances[,] it is the corporation, not its owner or officer" who is liable for torts committed by its employees or agents.  *Shostack I*, at *5.[17]  "In general, absent bad faith or fraud, corporate officers and directors **acting within the scope of their employment** cannot be held personally liable for breaches of contract or tortious acts committed by their corporations."  *Id.* (emphasis added) (citing *Teledyne Indus., Inc. v. Eon Corp.*, 373 F. Supp. 191, 196 (S.D.N.Y. 1974) ("It is now well settled that an officer or director is not, merely by virtue of his office, liable for the tortious acts of the corporation.  He must direct, authorize, or in some meaningful sense participate actively in the assertedly wrongful conduct.")).  And in TCPA cases specifically, courts have expressed "doubts" as to whether Congress even intended the TCPA to impose personal liability on corporate officers acting in their corporate, rather than personal, capacities.  *See, e.g.*, *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3d Cir. 2018); *Cunningham v. Capital Advance Solutions, LLC*, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018); *KHS Corp. v. Singer Fin. Corp.*, 2019 WL 1359262, at *5 (E.D. Pa. Mar. 26, 2019).  Such is particularly true in this case.

And at the very least, courts in this Circuit require more than mere conclusory allegations that an individual **personally participated** and authorized calls allegedly invoking the TCPA.  *See, e.g.*, *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) (finding conclusory allegations that individual defendants "had personal involvement with their respective Defendants' corporate business activities" insufficient to establish individual participation and finding "mere knowledge and control of the company's operations . . . insufficient").[18]  *See Cunningham v. Channer, LLC*, 2018 WL

---

[17] *See also generally* 3A W. Fletcher, Cyclopedia of the Law of Private Corp. § 1137, pp. 300-01 (rev. ed. 1991-1994).

[18] In *Reynolds*, the court found that conclusory allegations that the individual defendants "ha[d] been involved in the decision making relating to the improper, deceptive, and/or fraudulent activity involved in this case"; "controlled the day-to-day operations of the Defendant companies and developed aspects of business activities, such as sales and marketing plans and

4620391, at *7 (W.D.N.Y. Sept. 26, 2018) (denying default judgment on TCPA claim that individuals had "personal liability for the offending calls" where plaintiff only "advance[d] a conclusory assertion—that [the individuals] 'personally participated and authorized the calls'—but [did] not offer any supporting factual detail whatsoever"); *Shostack I*, at *6 ("Absent specific allegations that the individual defendants participated in any of the allegedly illegal acts committed by their respective corporations, they cannot be held personally liable for those actions").[19]  This Court should too.

As previously discussed, Plaintiff offers one conclusory allegation concerning the Individual Defendants' conduct with respect to the Messages, only asserting "upon information and belief" that they "used their control and domination of WDS and Green Cash to further their illegal scheme of sending out . . . the Messages."  *See* Compl. ¶ 23.[20]  Therefore, even with this new allegation, the Complaint fails to allege facts tending to show that they *personally* sent the Messages or directed the sender in any way (because they did not).  Moreover, the Complaint noticeably lacks any allegations that they acted in their *personal*, rather than corporate, capacities.

Thus, in sum, it is patently clear that the Individual Defendants cannot be liable simply for "operating" Green Cash or WDS.  *See, e.g., Washington v. Westchester Cty. Dep't of Correction*, 2015 WL 408941, at *6 (S.D.N.Y. Jan. 15, 2015) (dismissing complaint because plaintiff "fails to allege any conduct on the part of the individual defendants"); *Desyatnikov v. Credit Suisse Group, Inc.*, 2012 WL 1019990, at *2 (E.D.N.Y. Mar. 26, 2012) ("It is well settled that where the complaint . . . contains no allegations . . . indicating how the defendant violated the law or injured the plaintiff, a motion to

activities"; and "were aware of, or should have been aware of, the improper business practices and should have taken action to prevent the improper practices and changed the company's business practices" were insufficient to establish individual participation. *Id.* (quotations, alterations and citations omitted).  Plaintiff asserts similar conclusory allegations here, which therefore fail to establish jurisdiction. *See* Compl. ¶¶ 20, 21, 23, 31-35.

[19] *Accord Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222 (N.D. Ill. Feb. 13, 2018) (granting motion to dismiss for lack of personal jurisdiction and for failure to state a TCPA claim, holding "deficient and conclusory allegations . . . that all Defendants act as agents of all other Defendants" insufficient).

[20] It is unclear whether "their" refers to the Individual Defendants, WDS, or Green Cash in this allegation and many others, which is also problematic for Plaintiff's amended Complaint. *See infra* Section III.D.

-18-

dismiss the complaint in regard to that defendant should be granted.") (citation omitted).  These allegations clearly fall short, and therefore they should be dismissed against the Individual Defendants.

### D.    Plaintiff Impermissibly Lumps Defendants Together in "Shotgun" Fashion.

Plaintiff's claims also fail because he has not alleged *specific* acts by *specific* Defendants, instead "lumping" them together in violation of Rule 8(a), which requires that a defendant have "fair notice" of the claims being asserted against him.  *See* Fed. R. Civ. P. 8(a); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard"); *Medina v. Bauer*, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("lumping all the defendants together and failing to distinguish their conduct" failed to satisfy Rule 8 and "fail[ed] to give adequate notice to these defendants as to what they did wrong").  Here, Plaintiff fails to provide Defendants fair notice of the claims asserted against them because he fails to distinguish between the acts of one Defendant versus the acts of another.  Thus, the Complaint should be dismissed.

### E.    Plaintiff Pleads No Facts Supporting Allegations That the Messages Were Made Using an ATDS.

Plaintiff's Complaint continues to offer only unsupported conclusions that the calls were made using an ATDS, asserting that "WDS employed a database system (the 'Database') that sent out automatic text messages to telephone numbers" and rehashing previous allegations that Defendants used "a software/hardware system which contacted plaintiff without human manipulation or intervention" and that "the Database is an [ATDS] as defined by 47 U.S.C. § 227(a)(1)."  Compl. ¶¶ 25, 35.[21]  Courts routinely reject claims that merely regurgitate the elements of TCPA claims.

---

[21] Notably, Plaintiff still fails to make any connection between Defendants and WDS's purported use of an ATDS.  Plaintiff attaches Exhibit 7, a declaration by Defendant Holovchenko, which pertains to WDS, *but not Green Cash*, and mentions *other* websites that are not relevant to this action.  *See* Compl. ¶ 26 & Exhibit 7 thereto (stating that WDS owned and operated the websites www.45cash.com, www.1000funds.com, and www.5000funds.com).  Further, the title of each of these websites contains a number and a term relating to money (*i.e.*, cash or funds) which is clearly not present in the websites alleged in the Complaint.  *See* Compl. ¶ 11 (listing www.requestloantoday.com, www.rushadvances.com, www.fundsrequestonline.com).

*See, e.g.*, *Baranski v. NCO Fin. Sys.*, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014) (citing cases) (internal quotation marks and citation omitted) ("[T]he vast majority of courts to have considered the issue have found that a bare allegation that defendants used an ATDS is not enough."); *Snyder v. Perry*, 2015 WL 1262591, at \*8, 13 (E.D.N.Y. Mar. 18, 2015) (dismissing TCPA complaint and denying leave to replead, because plaintiff "must at least describe, in laymen's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an [ATDS]").[22]

Here, Plaintiff "merely restates the elements of a violation" of the TCPA, "simply parrot[ing] the statutory language." *Snyder*, 2015 WL 1262591, at \*8; Compl. ¶¶ 25, 35, 38-44. The Complaint completely lacks support for such assertions despite Plaintiff's attempts to bolster his original allegations with more conclusory ones. In addition, the Messages themselves suggest a personal, non-mechanical communication since they refer to specific dollar amounts for specific loans, reference a "client," and include a "unique" number, as Plaintiff concedes. *Id.*, ¶¶ 28-29. It is just as conceivable that the text messages were done by hand, or not using an ATDS, and therefore, Plaintiff has "not stated with a level of factual specificity a claim under the TCPA." *Freidman*, at \*3.

## F.  Plaintiff's Second, Third, and Fourth Counts Fail to State a Claim Under the Implementing Regulations.

Plaintiff's second, third, and fourth counts fail to state a claim simply because they purport to seek relief under the TCPA's implementing and related regulations that do not provide a private right of action. *See* Compl. ¶¶ 51-59 (seeking relief under 47 C.F.R. 64.1200(b)(1), 47 C.F.R. 64.1200(b)(2),

---

[22] *See also Reo*, 2016 WL 1109042, at \*9 ("[M]erely alleging that a defendant used an ATDS system, without the inclusion of additional facts, is insufficient to state a claim for relief."); *Freidman v. Massage Envy Franchising, LLC*, 2013 WL 3026641, at \*2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim where allegations of "generic and impersonal" messages were "not enough to make the claims plausible," were "nothing more than a 'formulaic recitation of the elements of a cause of action,'" and did "nothing more than assert a speculation").

and 47 C.F.R. 64.1601).[23]  *See, e.g.*, *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (dismissing claims brought under 47 C.F.R. 64.1200 and 47 C.F.R. 64.1601 because they do not provide a private right of action); *Meyer v. Capital Alliance Group*, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) (dismissing claims brought under 47 C.F.R. 64.1200(b)(1), 47 C.F.R. 64.1200(b)(2), and 47 C.F.R. 64.1601(e), "find[ing] [that] none of the regulations in these claims confer a private right of action upon Plaintiffs"); *McDermet v. Porch.com, Inc.*, 2019 WL 1619867, at *4 (D. Mass. Apr. 16, 2019) ("The TCIA does not allow for a private right of action");  *Hurley v. Wayne Cty. Bd. of Educ.*, 2017 WL 2454325, at *3 (S.D. W. Va. June 6, 2017) ("The Court is unwilling to read a private cause of action into Section [227](d) and its attendant regulations where Congress conspicuously omitted it but explicitly included it in adjacent subsections.").  Thus, these claims fail as a matter of law and, as such, they should be dismissed under Rule 12(b)(6).

### G.  Plaintiff Fails to State a Claim Under the GBL.[24]

#### 1.  *Plaintiff Fails to State a Claim Under GBL § 399-p.*

Plaintiff's amendments fail to rectify the issues plaguing his GBL § 399-p claim because the conduct at issue—namely, sending text messages—does not fall within the scope of the statute.  *See* Compl. ¶¶ 66-73.  Section 399-p provides, in relevant part, that "[w]henever telephone calls are placed through the use of an automatic dialing-announcing device," they are required to "(a) state **at the beginning of the call** the nature of the call and the name of the person or on whose behalf the message

---

[23] The Complaint alleges that Defendants "or their agents as outlined above" engaged in certain conduct rather than just that "Defendants" did so.  *See* Compl. ¶¶ 52, 55, and 58.  Amending the original language to add the "agent" reference, however, does not change the substance of the implementing regulations, which do not provide a private right of action.

[24] Both claims under the GBL are derivative of the same set of facts as Plaintiff's TCPA claims.  Since the TCPA claims are insufficient, Plaintiff's GBL claims likewise fail.  The Court should not exercise supplemental jurisdiction over the state claims.  *Bank v. Uber Techs. Inc.*, 2015 WL 8665441, at *3 (E.D.N.Y. Dec. 11, 2015), *aff'd*, 669 F. App'x 579 (2d Cir. 2016) ("declin[ing] to exercise supplemental jurisdiction over the alleged violation of NYGBL § 399-p" after granting defendant's motion to dismiss TCPA claims); *Bank*, 2019 WL 1306064, at *4 (dismissing GBL claim where the court dismissed sole federal claim brought under the TCPA).

is being transmitted and **at the end of such message** the address, and telephone number" of that person, provided such disclosures are not otherwise prohibited by law, and "(b) disconnect the automatic dialing-announcing device from the telephone line **upon the termination of the call** by either the person calling or the person called." GBL § 399-p(3) (emphasis added).[25]

The legislative history of the statute explicitly exempts text messages from its scope, stating that "[t]elemarketing does not include the solicitation of sales through **any media other than by telephone calls**." 2000 Sess. Law News of N.Y. Ch. 546 (S. 8116) (McKinney's) (emphasis added). Moreover, the statute's language on its face makes clear that it applies to telephone calls rather than text messages, because it contains a time component. *See* GBL § 399-p(3) (requiring certain conduct "at the beginning of the call," "at the end of such message," and "upon termination of the call"). Text messages do not have the same temporal characteristics as telephone calls; rather, they are transmitted to the recipient in full. It would be nonsensical to apply a statute with temporal requirements to text messages. *See id.* Therefore, the statute does not apply to this case, and the claim should be dismissed.

2.       *Plaintiff Fails to State a Claim Under GBL § 349.*

Plaintiff also purports to seek relief under GBL § 349, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]" (GBL § 349(a)) and requires that a plaintiff allege facts showing that a defendant "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Shostack I*, at *8 (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (citing *Oswego Laborers' Local 214 Pension Fund v.*

---

[25] Plaintiff's claim also fails because he merely concludes without support that Defendants used "an automatic dialing-announcing device as defined by NYGBL § 399-p(1)(a)." Compl. ¶ 35. *See supra* Section III.E.

*Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

Plaintiff fails to state a claim under this section for the same reasons that he fails to state a TCPA claim—*i.e.*, he merely regurgitates the elements of the statute without facts connecting Defendants to any of the Messages. *See* Compl. ¶¶ 60-65. Plaintiff concludes without support (or any amendment) that "[t]he acts, practices, and conduct engaged in . . . constitute 'deceptive acts and practices.'" *Id.*, ¶ 63. In fact, the only *new* sentence added to this claim is equally conclusory, stating without support that "[t]hese statements and assertions are materially misleading." *Id.* These allegations continue to fail to state a GBL violation for several reasons:

**First**, Plaintiff fails to allege that Defendants actually sent the Messages to him while Defendants were located *in New York* or that they conduct any business *in New York*. *See* discussion at Section II.B., *supra*. Therefore, conclusory allegations that Defendants "contact[ed] people in New York by text messages," thereby "direct[ing] their representations to the public," are insufficient to allege that Defendants engaged in consumer-oriented conduct in New York, as is required to state a claim under § 349. *See* GBL § 349 (requiring "the furnishing of any service in [New York]"); *Spencer v. Arizona Premium Fin. Co.*, 2011 WL 4473178, at *8 (W.D.N.Y. Sept. 26, 2011) (dismissing § 349 claim where complaint alleged "nothing more than a general legal conclusion [that defendant made representations to plaintiff and other consumers at large]; [and] it provide[d] no concrete facts from which this Court could infer a scheme with broad impact or injury to consumers at large").

**Second**, Plaintiff alleges deception based on the allegation that the Messages "assert[ed] that plaintiff or any other contacted party had previously requested a loan or was a 'client.'" Compl. ¶ 63. This conduct cannot be deceptive, however, because, as Plaintiff admits, a reasonable consumer would not be deceived by such a message if they were aware that they were not, in fact, a client. *See id.*, ¶ 29 ("Plaintiff is not a 'client' of defendants."); *Shostack I*, at *8 (finding "nothing deceptive about

-23-

[defendant] running [plaintiff's] credit report in relation to his online mortgage application purportedly submitted in his name"). And although it is still unclear whether Plaintiff alleges that the *receipt* of the Messages deceived him, that claim also fails. *See id.* at *8 (disseminating information "may have affected [plaintiff's] privacy, [but] these acts neither deceived nor misled anyone"); *Nicholson v. Forster & Garbus LLP*, 2012 WL 273150, at *3 (E.D.N.Y. Jan. 30, 2012) (call center employee purporting to be employee of debt collector did not constitute misleading conduct). Plaintiff also alleges that a website listed "false addresses" and a "non-functioning 'contact' phone number[s]" but fails to specify how these acts are likely to mislead a reasonable consumer, as contemplated by § 349. Compl. ¶ 63. In any event, general allegations of "consumer confusion" are insufficient to state a claim under GBL § 349. *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010).[26]

*Third*, Plaintiff cannot allege actual injury because "unquantifiable emotional distress" does not constitute injury. *See Shostack I*, at *9 (dismissing GBL § 349 claim where plaintiff "ha[d] not alleged any actual injury caused by Defendants' conduct" because "[a]n unquantifiable injury to a privacy interest generally does not suffice") (internal citations omitted). In addition, he does not allege any harm to the public interest. *Nicholson*, 2012 WL 273160, at *3 (citing *Stadt*, 719 F. Supp. 2d at 324 ("the Complaint lack[s] any allegations as to how consumers were harmed by [defendant's] 'misleading' behavior")). As Plaintiff fails to provide any new allegations of actual injury and for the other reasons stated above, Plaintiff's GBL § 349 claim continues to fail.

## IV.   THE COURT SHOULD STRIKE PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES BECAUSE PLAINTIFF IS PROCEEDING PRO SE

Finally, Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff, a *pro*

---

[26] Moreover, Plaintiff has not even attempted to amend this insufficient claim. *See generally* Compl. ¶¶ 62, 63, 64 (adding "or their agents as outlined above").

*se* litigant, is not entitled to attorney's fees, and the Court should strike his request as a result. *See Warren Publ'g Co. v. Harris Publ'ns, Inc.*, 2002 WL 334478, at *1 (S.D.N.Y. Feb. 28, 2002) (courts "do not permit recovery of attorney's fees by a person appearing *pro se*, even when that person is an attorney"); *Ventura v. Sinha*, 2005 WL 1798629, at *3 (W.D.N.Y. July 27, 2005) ("plaintiff is proceeding *pro se* . . . as such . . . [h]e is not entitled to recover attorney's fees for this motion."); *Kim v. BMW of Manhattan, Inc.*, 819 N.Y.S.2d 848 (Sup. Ct. 2005), *aff'd as modified*, 35 A.D.3d 315 (2006) (plaintiffs proceeding *pro se* on GBL claims were not entitled to attorney's fees).

## CONCLUSION

For the reasons stated above, the TCPA and GBL claims again fail to state a claim against Defendants. Further, this Court does not have personal jurisdiction over Defendants. Accordingly, Defendants respectfully request that the Court enter an order granting the Motion in its entirety and dismissing Plaintiff's Complaint <u>with prejudice</u> pursuant to Fed. R. Civ. P. 12(b)(2) and/or 12(b)(6) and striking Plaintiff's request for attorney's fees pursuant to Fed. R. Civ. P. 12(f).[27]

---

[27] The dismissal should be with prejudice because there is "no legal possibility" for Plaintiff to state a claim against Defendants, he has already repleaded his claims, and it "would result in a waste of judicial resources to permit [him] to try again." *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 357 (S.D.N.Y. 2010); *Campagnello v. Ponte*, 2017 WL 4124337, at *1 (S.D.N.Y. Sept. 13, 2017) (dismissing with prejudice where plaintiff had already had the opportunity to amend his complaint and indeed filed an amended complaint); *Kranser v. Rahco Funds LP*, 2012 WL 4053805, at *3 (S.D.N.Y. Aug. 9, 2012).

DATED:  June 11, 2019

Respectfully submitted,

GREEN CASH LLC, MAKSYM HOLOVCHENKO,
MIKHAIL PARSHIN AKA MICHAEL PARSHIN,
AND FURKAT KASIMOV AKA FRANK
KASIMOV

By their attorneys,

*s/ Danielle C. Newman*
Danielle C. Newman
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Tel.: (212) 790-4500
Fax: (212) 790-4545
dnewman@manatt.com

Christine M. Reilly (*pro hac vice* forthcoming)
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd
Los Angeles, CA 90064
Tel.: (310) 312-4000
Fax: (310) 996-7037
creilly@manatt.com

-26-

## CERTIFICATE OF SERVICE

I, Danielle C. Newman, hereby certify that on June 11, 2019, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants by first-class mail.

*s/ Danielle C. Newman*

-27-